**C.O. CHRISTIAN & SONS CO., INC.,**
**Plaintiff–Appellant,**

v.

**NASHVILLE P.S. HOTEL, LTD. and**
**Condel Construction Co., Inc.,**
**Defendants–Appellees.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

September 23, 1988.

Permission to Appeal Denied by
Supreme Court Jan. 30, 1989.

Lew Conner, R.E. Lee Davies, Waller, Lansden, Dortch & Davis, Nashville, for plaintiff-appellant.

William L. Harbison, Alvin L. Harris, O'Hare, Sherrard & Roe, Nashville, for Sara Properties, Inc.

## OPINION

CANTRELL, Judge.

The plaintiff, a subcontractor, filed this action to establish and enforce a materialman's lien on the Park Suite Hotel in Nashville. The Chancellor dismissed the complaint for two reasons: because the property was not attached within ninety days after the notice of lien was given to the owner, and because the plaintiff's subcontract provided for the resolution of disputes by arbitration. In granting the motion to dismiss, the Chancellor overruled the plaintiff's contention that the owner was collaterally estopped from asserting the failure to attach the property because of a contrary ruling in another case involving the owner but not the subcontractor.

### Facts

C.O. Christian & Sons Co., Inc. ("Christian") entered into a subcontract with Condel Construction Company, Inc. ("Condel") on March 10, 1986. Under this subcontract, Christian agreed to provide electrical materials and labor for use in Condel's construction of the Nashville Park Suite Hotel. Condel had previously entered into a prime contract with Nashville P.S. Hotel, Ltd. ("NPSH"), the owner of the property.

Christian completed its performance under the contract on October 30, 1986, but never received full payment of the contract price ($763,121). Therefore, on December 9, 1986, Christian filed a notice of lien on the property with the Davidson County Register's Office. Condel and NPSH received proper notice of the lien.

On February 26, 1987, Christian filed suit in Davidson County Chancery Court to en-force the lien. The complaint included a prayer for an attachment, but the record does not show that the plaintiff took any further steps to get the attachment issued. On April 20, 1987, the attachment remaining unissued, defendants Condel and NPSH moved to dismiss the action. Thereby alerted to the fact that the writ of attachment had not been issued, Christian reasserted its request for an attachment by motion on April 23, 1987. The attachment was then issued on April 27, 1987, 139 days after the filing of notice.

The Chancery Court granted defendants' motion to dismiss. Because the attachment was not issued within ninety days after the notice of lien, the Chancellor dismissed with prejudice the lien claim against NPSH. The Chancellor also dismissed the subcontract claim against Condel because the contract provided for the resolution of disputes by arbitration. Christian appeals the Chancery Court's dismissal.

Both Condel and NPSH have filed for Chapter 7 bankruptcy. However, the bankruptcy court has granted Christian relief from the automatic stay to allow Christian to proceed with this appeal.

Subsequent to Christian's appeal, this court permitted Sara Properties, Inc. ("Sara") to become a party to the appeal. NPSH sold the property at issue to Sara on November 20, 1986. (Sara does not argue that it should have received notice of Christian's lien. According to Christian's response to Sara's motion to be added as a party, Sara did not record its deed until after Christian's complaint was filed.)

### Collateral Estoppel

Christian asserts that defendants were estopped from filing their motion to dismiss because a similar motion was overruled in a dispute between NPSH and another subcontractor. Stones River Steel, Inc. brought suit against NPSH to assert a lien on the same property at issue in the present case. NPSH moved for dismissal on the ground that Stones River had not obtained a writ of attachment within 90 days of the notice of lien. The Davidson County Chancery Court overruled the mo-

tion to dismiss. (*See* Order granting motion to dismiss *Stones River Steel, Inc. v. Nashville P.S. Hotel, Ltd., et al.,* filed in Nashville, April 15, 1987.) The parties subsequently settled.

Christian's argument is based on the theory of collateral estoppel (or issue preclusion). The Restatement, Second, of Judgments, § 27, provides a concise statement of the general rule of collateral estoppel:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or a different claim.

*See also Shelley v. Gipson,* 218 Tenn. 1, 400 S.W.2d 709 (1966); *In Re Adoption of Johnson,* 678 S.W.2d 65 (Tenn.App.1984).

In the present case, at least two of the elements of collateral estoppel appear to be missing. First, the Chancery Court's denial of NPSH's motion to dismiss is not a final judgment. Second, the necessary identity of parties is absent.

■ Tennessee cases clearly indicate that, in order to warrant the application of res judicata (of which collateral estoppel is one type), a prior adjudication must be final. *See Shelley v. Gipson,* 218 Tenn. at 12, 400 S.W.2d at 714; *Scales v. Scales,* 564 S.W.2d 667 (Tenn.App.1977). The cases do not provide much guidance, however, on the issue of what constitutes a final judgment for purposes of collateral estoppel.

One available source as to the meaning of "final judgment" is the Tennessee Rules of Appellate Procedure. Although the principles governing the meaning of "final judgment" for purposes of appeal may differ from those relevant for purposes of collateral estoppel, the Rules of Appellate Procedure should provide some guidance.

Tenn.R.App.P. 3(a) provides for an appeal of right in civil actions only from a final judgment. The Advisory Commission Comment to subdivision (a) explains that the rule does not define a final judgment "because it is typically clear whether an order is final or interlocutory."

Cases interpreting the language of Tenn. R.App.P. 3(a) discuss the meaning of "final judgment" for purposes of appeal. A Supreme Court case, *Saunders v. Metropolitan Government of Nashville,* 214 Tenn. 703, 709, 383 S.W.2d 28, 31 (1964), describes a judgment as final "when it decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court." The Court of Appeals has held that an order overruling a motion for summary judgment is not a final judgment within the meaning of Tenn. R.App.P. 3(a) because it "leaves the entire suit for later trial and disposition. . . ." *In Re Estate of McCord,* 661 S.W.2d 890, 891 (Tenn.App.1983).

Based on the above principles and on a common sense understanding of the term "final judgment," Christian's collateral estoppel argument should fail because an order overruling a motion to dismiss is not a final judgment. Denial of a motion to dismiss does not end a lawsuit. To the contrary, such an order allows the lawsuit to continue and contemplates further litigation. Admittedly, in the dispute between NPSH and Stones River, the Chancery Court's overruling of NPSH's motion to dismiss clarified a key issue in the case. Nevertheless, no final judgment incorporating that decision was ever entered. The parties chose to settle out of court. Had the case gone to trial, the court retained the power to change its mind and decide to grant a second motion to dismiss.

Another problem with Christian's collateral estoppel argument is the lack of identity of parties between the two cases. Christian cites some authority for an exception to the mutuality of parties requirement in cases where estoppel is used defensively. However, since the order by which Christian argues NPSH was estopped is not a final judgment, the court will not address the topic of mutuality of parties.

### Arbitration Clause

■ Sara argues that the arbitration clause contained in the contract between Christian and Condel makes dismissal of the present suit proper.

The Chancellor's finding that the arbitration agreement between Christian and Condel is valid does not affect the rights as between the property owner and Christian. Neither NPSH nor Sara is a party to the contract between Christian and Condel. An arbitration clause does not bind one not a party to the contract. *Jackson v. Chambers*, 510 S.W.2d 74 (Tenn.1974). An arbitration agreement does not bind either party unless both parties are bound. *Nunnelly v. Southern Iron Co.*, 94 Tenn. 397, 29 S.W. 361 (1895). Since neither Sara nor NPSH is a party to the contract between Condel and Christian, Sara is not bound by the arbitration clause and cannot enforce the clause against Christian.

## *Materialman's lien*

### A.

■ Sara argues that Christian's lien expired because the writ of attachment was not issued within ninety days of the notice of lien. Since the materialman's lien is a creature of statute, the resolution of this argument must begin with the Tennessee lien statutes.

Two sections of the Tennessee Code govern the continuing validity of Christian's lien. Tenn.Code Ann. § 66–11–115 establishes the mechanic's lien and requires that the laborer give the owner notice of the lien within ninety days after the building is completed or the laborer's contract is discharged. Most relevant for purposes of the present issue, § 66–11–115(c) governs the duration of the lien once notice is given:

> Said lien shall continue for the period of ninety (90) days from the date of said notice in favor of such subcontractor, journeyman, furnisher, mechanic, or laborer, and *until the final termination of any suit for enforcement brought within that period.*

(emphasis added). Tenn.Code Ann. § 66–11–126 provides that attachment is the sole method of enforcement for the mechanic's lien and outlines the nature of the attachment:

> (1) Where the plaintiff or complainant lienor has a contract with the owner, the lien shall be enforced by attachment upon petition at law or bill in equity, filed under oath, setting for the the facts, describing the property, and making the necessary parties defendant.
>
> (2) Where there is no such contract, by attachment in court of law or equity in like manner; the writ of attachment to be accompanied by a warrant for the same claimed, to be served upon the owner....

Unfortunately, these two Code sections do not clearly indicate when a suit for enforcement (attachment) is deemed to be "brought" within the meaning of § 66–11–115. There are, however, several cases which discuss the proper interpretation of the lien statutes.

The leading Tennessee Supreme Court case dealing with the pertinent statutory language is *General Electric Supply Company v. Arlen Realty & Development Corporation*, 546 S.W.2d 210 (Tenn.1977). In *General Electric*, suit was filed and a writ of attachment was issued within ninety days of the date of notice. However, the writ of attachment was not actually levied until after the ninety-day period had passed. The Court of Appeals held that the lien was lost, relying on *Knoxville Structural Steel Co. v. Jones*, 46 Tenn. App. 518, 330 S.W.2d 559 (1959). The *Knoxville Structural Steel* case clearly required both the issuance and levy of attachment within the statutory period. *See Knoxville Structural Steel*, 330 S.W.2d at 561.

While adhering to the rule of strict statutory construction, the Supreme Court noted that "in actuality there is nothing in the statutes themselves which expressly refers to the date of the levy of attachment." *General Electric*, 546 S.W.2d at 212. The court expressed its reluctance "to see engrafted upon them [the lien statutes] any further or greater technicalities than their terms contain." *Id.* at 213. Finding no statutory or policy support for the levy requirement, the Supreme Court upheld the lien and overruled *Knoxville Structural Steel* to the extent that it required levy of attachment within the statutory period. *Id.* at 214.

*General Electric* does not address the issue of whether *issuance* of the writ of attachment must occur within the ninety-day period after notice of the lien. However, a recent Court of Appeals decision from the Eastern Section does clarify the point.

In an unpublished opinion, *Lewellyn Fabricating Company, Inc. v. Farley Metals, Inc.*, filed in Knoxville, January 29, 1988 [1988 WL 7300], the Court of Appeals invalidated a mechanic's lien on facts similar to those in the present case. In *Lewellyn*, as in the present case, suit was timely filed and the complaint included a prayer for attachment; moreover, in *Lewellyn*, unlike in the present case, the trial judge signed a fiat ordering that the writ of attachment be issued. Nevertheless, no attachment was issued within the ninety-day period after notice of the lien. (An attachment was ultimately issued 161 days after notice of the lien to the owner.) Citing *General Electric* (and other cases), the court emphasized the rule of strict statutory compliance. *Lewellyn* at p. 4. The court quoted language from *General Electric* to support is holding that, in order for the suit to be timely "brought," the attachment must be issued within the statutory period:

> "We are of the opinion that when a lien claimant has timely filed his complaint with the clerk praying for writ of attachment, and *when that writ has actually been issued by the clerk to the sheriff within the time period prescribed* in T.C.A. § [66–11–115], then the suit has been 'brought' within the meaning of the statute, and in compliance therewith...." *General Electric Supply v. Arlen Realty & Development Corp*, 546 S.W.2d 210, 213–214 (1977) (emphasis added).

*Lewellyn* at p. 5. As applied to the present case, the *Lewellyn* holding clearly dictates that the trial court's dismissal be affirmed because the writ of attachment was not issued within the ninety-day period.

### B.

■ Even accepting Sara's interpretation of the lien statutes, Christian argues that a Tennessee case establishes a limited exception to the statutory time frame. According to this argument, a lien remains valid if attachment issues within 180 days of the subcontractor's completion of work. In the present case, an attachment was issued on April 27, 1987—179 days after Christian's completion of performance on October 30, 1986.

Christian bases its argument upon *Eatherly Construction Company v. DeBoer Construction, Inc.*, 543 S.W.2d 333 (Tenn. 1976). The court in *Eatherly* invalidated the lien because the plaintiff failed to obtain a writ of attachment within the statutory period. *Id.* at 335–336. In reaching this result, the court summarized the two ninety-day time limitations and indicated that "the statute requires that a writ of attachment be issued and levied within 180 days of either plaintiff's completion of work ... or the completion of all work upon that property." *Id.* at 335. From this statement, Christian infers a 180–day window into which a subcontractor can fit, even if he fails to meet one of the statutory ninety-day limits.

The language upon which Christian relies was not necessary for the court's decision in *Eatherly*. Rather, as the Chancellor in the present case indicated in his order below, "the mention of the 180 day period was intended as the maximum length of time to enforce any lien claim, generally, and was not intended to modify the existing statutes." Thus, if a subcontractor gives notice of his lien on the ninetieth day following completion, he has ninety more days in which to bring a suit for enforcement. However, if a subcontractor files his lien earlier (as in the present case), the second ninety day period runs from the date of notice.

In *Eatherly*, the plaintiff failed to obtain attachment within ninety days of notice. Neither did he obtain attachment within 180 days of completion. Though the court's mention of the 180–day combined period is somewhat curious, it seems reasonable to conclude that the court merely sought to point out the fact that the 180–day period is the absolute maximum (when notice is on the ninetieth day after comple-

tion) and that plaintiff's failure to attach within that period constituted an absolute bar to recovery. The court expressed no intention to depart from the statutory requirements.

This court does not recognize a 180–day window by which a subcontractor could circumvent the statutory time limitations.

Christian's collateral estoppel argument and Sara's arbitration clause argument fail. The court affirms the decision of the lower court granting defendants' motion to dismiss. Under the rule of *Lewellyn*, Christian's materialman's lien was extinguished when a writ of attachment was not issued within 90 days of notice of the lien.

The cause is remanded to the Chancery Court of Davidson County for any further necessary proceedings. Tax the costs on appeal to the appellant.

TODD, P.J., and KOCH, J., concur.