Herschel COOPER d/b/a Cooper Electric Company, Plaintiff-Appellee,

v.

Thomas W. HUNTER, George Patton Builders, Inc., Citizens Central Bank, and the Southern Corporation, Defendants-Appellants.

Court of Appeals of Tennessee, Middle Section.

March 31, 1978.

Certiorari Denied by Supreme Court Aug. 28, 1978.

Charles Patrick Flynn, Nashville, for plaintiff-appellee.

Richard F. LaRoche, Jr., Murfreesboro, for defendants-appellants.

OPINION

TODD, Judge.

*With the concurrence of participating judges, the original opinion has been abridged for publication.*

The defendant, Thomas W. Hunter, has appealed from the Chancellor's decree upholding plaintiff's lien claim for labor and materials and ordering *the interest of* appellant in certain realty sold to satisfy the lien.

Other defendants are not before this Court on appeal.

There are three assignments of error, of which the first and third are as follows:

"ONE: The lower Court erred in overruling your defendant's Motion to Dismiss for failure to file the Notice of Lien within ninety days of the date of the last work.

THREE: The lower Court erred in holding that the preponderance of the evidence established that the subcontractor's work was not 'substantially completed' until the electrical inspection was passed."

In November, 1973, Thomas W. Hunter and wife, June Hunter, obtained title to the tract of land in question.

On February 21, 1974, *Mr. and Mrs.* Hunter agreed to lease to The Southland Corporation a store building to be constructed on the land.

On April 3, 1974, *Mr.* Hunter contracted with George Patton Builders, Inc., as general contractor to construct the required building.

At some time thereafter, Patton employed plaintiff as subcontractor to furnish the necessary materials and labor for completion of the electrical facilities of the building.

Plaintiff began work on May 31, 1974. The date of his last work is at issue.

In the middle of September, 1974, the building was substantially complete, Hunter paid the general contractor in full, and the tenant started paying rent.

Plaintiff testified that his work was 99.9% complete on October 26. On October 31, the city electrical inspector refused to approve the electrical work because of minor deficiencies therein which he listed as follows:

"a) Failure to install two connectors in the grounding area for each outlet;

b) The switch must be properly attached to the building (locknuts need to be tightened) and groundwires need to be moved;

c) The contents of the electrical box were mislabeled."

On November 19, 1974, the electrical work was again inspected and approved.

On January 27, 1975, plaintiff filed in the Register's office of Rutherford County a "Notice of Furnisher's Lien" claiming a lien against the subject property (described as property of *Mr. and Mrs. Hunter*). Said notice contains the following statement:

"Said lien is to secure the payment of the sum of $3,750.00 for labor and materials furnished to George Patton Builders, Inc., in the making of improvements to the above described property which said labor and materials were furnished and used under a contract with George Patton Builders, Inc. through *October 26, 1974.*"

On April 25, 1975, plaintiff filed his complaint alleging:

"The last materials furnished and work performed was *October 26, 1974.*"

On September 29, 1976, plaintiff filed an amended complaint stating:

"The last material furnished and work performed was January 13, 1975."

Defendant moved to dismiss because both owners of the property were not included in the suit and answered that timely notice of lien was not given as required by law.

As stated, the Chancellor sustained a lien in favor of plaintiff and against *only the interest of Mr. Hunter* in the property.

The plaintiff's "Notice of Furnisher's Lien" stated the last work was done on October 26, 1974. His complaint, filed on April 25, 1975, contained the same statement. On September 29, 1976, 17 months after filing his complaint, plaintiff finally filed an amended complaint changing the date of last labor from October 26, 1974, to January 13, 1975.

The Chancellor would have been more than justified in refusing to allow the amendment at so late a date under the circumstances.

This Court has difficulty in agreeing with the Chancellor's finding of fact (that the

notice given on January 27, 1975, was within 90 days of completion of plaintiff's contract).

On the subject of the date of last work, the evidence is as follows:

1. Plaintiff, himself, admitted in his complaint that the last work was October 26, 1974. Such admission was a formal, judicial admission for 17 months, and ceased to be such only when amended by leave of the Chancellor; but even after amendment, the original complaint remains as an informal, evidentiary admission. *Raines v. Jones*, 23 Tenn. (4 Humph.) 490 (1844); *McEwen v. Jenks*, 74 Tenn. (6 Lea) 289 (1880); *Hewgley v. General Motors Acceptance Corp.*, 39 Tenn.App. 553, 286 S.W.2d 355 (1956).

2. The plaintiff subsequently testified that he had "discovered" a work record for January 13, 1975, which is not exhibited to the record. The only written evidence in this regard is an informal list of days worked with number of men working and number of hours worked. The list is entirely in blue ink except the last two items, which are in black ink. They are,

10–26    2 men 8 hours.
1–13    2 men 3 hours.

Said list of items is of very doubtful admissibility as a business record and of doubtful credibility under the circumstances.

3. The testimony and record of the electrical inspector, Eubanks, indicates that he refused final approval on October 31, 1974; that another permit was purchased by plaintiff on November 5, 1974; and that the work was again inspected and finally approved on November 19, 1974. Obviously, if any work was done by plaintiff after October 31, 1974, it was done after the issuance of the new permit on November 2 and before final approval on November 19.

4. The nature of the work done after October 26, 1974, is uncertain. The best evidence of same is the testimony of the inspector that two connectors were missing, locknuts needed to be tightened, ground connections in the switch box should be moved, and labeling needed correction.

5. Plaintiff, himself, testified that his work was 99⁹⁄₁₀% complete on October 26, 1974. This percentage is superior to the well known advertisement of "99⁴⁴⁄₁₀₀% pure."

In recognition of the general rule that credibility is for the Trial Judge, this Court will not revise the obvious finding of the Chancellor that the electrical inspector was mistaken and plaintiff's belated "discovery" of a work sheet represented the true facts.

■ Nevertheless, plaintiff must fail because of his uncontroverted and conclusive admission under oath that on October 26, 1974, his work was 99⁹⁄₁₀% complete, and the uncontradicted evidence that, as of October 26, 1974, the building had been accepted, paid for and put to use by the owners.

In *Dunn v. McKee*, 37 Tenn. (5 Sneed) 657 (1858) the Supreme Court held that a return to repair a leak in a roof for which no further charge was made did not extend the time for enforcement of the lien.

In *Luter v. Cobb*, 41 Tenn. (1 Coldw.) 527 (1869), the Supreme Court disallowed a lien and stated:

"Upon the foregoing facts, we feel constrained to reverse the decree. From the whole record we are led to the conclusion that the contract was regarded by both parties as complete and the work finished in the fall of 1856, when McReynolds & Co. took possession of the house. And that the trifling work was done in the fall of 1858, and spring of 1858, was an afterthought to give color to the lien set up in the bill." 41 Tenn., p. 527

In *Wood v. Haney*, Tenn.Ch.App., 1897, 41 S.W. 1072, the lien claim was disallowed and the Court said:

". . . Wood sent a couple of men up to the house, who did a small amount

of work, the weight of the proof indicating that it was putting on a skim coat of plaster or white coat of plaster on one little room, which both Haney and Wood claim that he was liable to do under the original contract. . . . we are satisfied and find that this was a mere pretense—an afterthought—for the purpose of reviving a lien which had long been lost and abandoned." 41 S.W. p. 1073.

In *East Lake Lumber Box Co. v. Simpson*, 5 Tenn.App. 51 (1927), this Court affirmed the Chancellor's decree denying a lien and said:

"A lien cannot be revived or effected by the doing of an insignificant act not originally contemplated, where it is so insignificant as to form no part of the original conception, such as the making good of trifling defects. (citing authorities)" 5 Tenn.App., p. 57.

From the foregoing, this Court is satisfied that, on October 26, 1974, plaintiff's work was "substantially completed." The plaintiff admits such in his sworn testimony; and, the fact that the work was inspected on October 31, 1974, is evidence that plaintiff considered his work to be completed, and so requested final inspection.

If plaintiff had sued without making the necessary adjustments and if defendant had plead failure to complete as a total defense, plaintiff would have relied, correctly, upon the doctrine of substantial completion.

■ Mere trivial imperfections, requiring corrective adjustments do not prevent a construction project from being "substantially complete" for lien purposes, and the correction of such imperfections is not a "furnishing of labor or materials" for which a charge may be made or a lien claimed.

■ Minor imperfections disclosed by the inspection of a public inspector will not toll the running of time for perfecting a lien. This is especially so when, as in the present case, the owner had no knowledge of the alleged imperfections and did not demand their correction.

■ The second assignment of error complains of the failure to join in this action the wife of the defendant who was a joint owner of the property. This assignment of error is overruled for the reason that the Chancellor's decree deals only with the interest of the named defendant (Mr. Hunter), and the unnamed defendant (Mrs. Hunter) may not be disturbed in her enjoyment of the property by virtue of this action. *Robinson v. Trousdale County*, Tenn. 1974, 516 S.W.2d 626.

■ Appellant also insists that plaintiff cannot prevail because the general contractor was not joined in this action. It appears that the general contractor was sued, but process was never served upon him.

*East Lake Lbr. Box Co. v. Simpson*, supra, and *Jordan v. Dietz*, 201 Tenn. 77, 296 S.W.2d 866 (1956) seem to support appellant's insistence, but the rule announced in said authorities was based upon the former text of T.C.A. § 64–1126, which expressly required that process in lien actions *be served* upon the general contractor. The statute now requires only "making necessary parties defendant." "Necessary parties" are those parties against whom plaintiff seeks relief. The present text of the statute removes the harsh, arbitrary requirement of the former text that the general contractor be served with process whether or not relief was sought against him.

The decree of the Chancellor is reversed and plaintiff's suit is dismissed. All costs, including costs of this appeal, are taxed against plaintiff-appellee.

Reversed and dismissed.

SHRIVER, P. J., and DROWOTA, J., concur.